# State of New York
# Court of Appeals

OPINION

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 1
Freedom Mortgage Corporation,
      Appellant,
        v.
Herschel Engel,
      Respondent,
et al.,
      Defendants.
-----------------------------------------------
No. 2
Ditech Financial, LLC, &c.,
      Appellant,
        v.
Santhana Kumar Nataraja Naidu,
      Respondent,
et al.,
      Defendants.
-----------------------------------------------
No. 3
Juan Vargas,
      Respondent,
        v.
Deutsche Bank National Trust
Company,
      Appellant.
-----------------------------------------------

No. 4
Wells Fargo Bank, N.A., &c.,
    Appellant,
  v.
Donna Ferrato,
    Respondent,
The Simon & Mills Building
Condominium Board, et al.,
    Defendants.
-----------------------------------
Wells Fargo Bank, N.A., &c.,
    Appellant,
  v.
Donna Ferrato,
    Respondent,
Capital One Bank (USA) N.A., et
al.,
    Defendants.

Case No. 1:
Brian A. Sutherland, for appellant.
Anthony R. Filosa, for respondent.
Legal Services NYC, et al., American Legal and Financial Network, New York State Foreclosure Defense Bar, New York Mortgage Bankers Association, USFN - America's Mortgage Banking Attorneys, United Jewish Organizations of Williamsburg, Inc., amici curiae.

Case No. 2:
Christina A. Livorsi, for appellant.
Holly C. Meyer, for respondent.
New York State Foreclosure Defense Bar, United Jewish Organizations of Williamsburg, Inc., Adam Plotch, amici curiae.

Case No. 3:
Patrick Broderick, for appellant.
Justin F. Pane, for respondent.
Francis M. Caesar, New York State Foreclosure Defense Bar, United Jewish Organizations of Williamsburg, Inc., Adam Plotch, amici curiae.

Case No. 4:
Brian S. Pantaleo, for appellant.
M. Katherine Sherman, for respondent.
Francis M. Caesar, New York State Foreclosure Defense Bar, amici curiae.

DiFIORE, Chief Judge:

These appeals—each turning on the timeliness of a mortgage foreclosure claim—involve the intersection of two areas of law where the need for clarity and consistency are at their zenith: contracts affecting real property ownership and the application of the statute of limitations. In *Vargas v Deutsche Bank Natl. Trust Co.* and *Wells Fargo Bank, N.A. v Ferrato*, the primary issue is when the maturity of the debt was accelerated, commencing the six-year statute of limitations period. Applying the long-standing rule derived from *Albertina Realty Co. v Rosbro Realty Corp.* (258 NY 472 [1932]) that a noteholder must effect an "unequivocal overt act" to accomplish such a substantial change in the parties'

- 1 -

contractual relationship, we reject the argument in *Vargas* that the default letter in question accelerated the debt, and similarly conclude in *Wells Fargo* that two complaints in prior discontinued foreclosure actions that each failed to reference the pertinent modified loan likewise were not sufficient to constitute a valid acceleration. The remaining cases turn on whether the noteholder's voluntary discontinuance of a prior foreclosure action revoked acceleration of the debt, reinstating the borrower's contractual right to repay the loan over time in installments. Adopting a clear rule that will be easily understood by the parties and can be consistently applied by the courts, we hold that where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary. These conclusions compel a reversal of the Appellate Division order in each case.

The parties do not dispute that under CPLR 213 (4), a mortgage foreclosure claim is governed by a six-year statute of limitations (*see Lubonty v U.S. Bank N. A.*, 34 NY3d 250, 261 [2019])—in each case, the timeliness dispute turns on whether or when the noteholders exercised certain rights under the relevant contracts, impacting when each claim accrued and whether the limitations period expired, barring the noteholders' foreclosure claims. Because these cases involve the operation of the statute of limitations, we begin with some general principles. We have repeatedly recognized the important objectives of certainty and predictability served by our statutes of limitations and endorsed by our principles of contract law, particularly where the bargain struck between the parties

involves real property (*see ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581, 593 [2015]).  Statutes of limitations advance our society's interest in "giving repose to human affairs" (*John J. Kassner & Co. v City of New York*, 46 NY2d 544, 550 [1979] [citations omitted]).  Our rules governing contract interpretation—the principle that agreements should be enforced pursuant to their clear terms—similarly promotes stability and predictability according to the expectations of the parties (*see 159 MP Corp. v Redbridge Bedford, LLC*, 33 NY3d 353, 358 [2019]).  This Court has emphasized the need for reliable and objective rules permitting consistent application of the statute of limitations to claims arising from commercial relationships (*see ACE Sec. Corp.*, 25 NY3d at 593-594, citing *Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399, 403 [1993]; *Ajdler v Province of Mendoza*, 33 NY3d 120, 130 n 6 [2019]).

Whether a foreclosure claim is timely cannot be ascertained without an understanding of the parties' respective rights and obligations under the operative contracts: the note and the mortgage.  The noteholder's ability to foreclose on the property securing the debt depends on the language in these documents (*see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 581 [2017]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162-163 [1990]).  In the residential mortgage industry, the use of standardized instruments is common, as reflected here where the relevant terms of the operative agreements are alike,[1] facilitating a general discussion of

---

[1] The agreements at issue in three of the cases before us are uniform instruments issued by Fannie Mae for use in New York (mortgage [Form 3033]; note [Form 3233; 3518]).  The

the operation of the statute of limitations with respect to claims arising from agreements of this nature. In each case before us, the note and mortgage create a relationship typical in the residential mortgage foreclosure context: in exchange for the opportunity to purchase a home, the borrower promised to repay a loan in favor of the noteholder, secured by a lien on that real property, over a 30-year extended term through a series of monthly installment payments. As prescribed in the agreements, the borrower's failure to timely make monthly installment payments constituted a default.

For over a century, residential mortgage contracts have typically provided noteholders the right to accelerate the maturity date of the loan upon the borrower's default, thereby demanding immediate repayment of the entire outstanding debt (*see e.g., Odell v Hoyt*, 73 NY 343, 345 [1878]). In these cases, the mortgages provide that the noteholder "*may*" require immediate payment of the outstanding debt—*i.e.*, accelerate the maturity of the loan—upon the borrower's default.[2] It is plain from this language that whether to exercise this contractual right is a matter within the noteholder's discretion—the noteholder is not obliged to accelerate the loan upon a default (*Adler v Berkowitz*, 254 NY 433, 436 [1930]). The extended contractual relationship explains why residential mortgage agreements are generally structured in this way. Noteholders can—and often do—

---

note and mortgage executed in *Wells Fargo* do not appear to be Fannie Mae or Freddie Mac standardized instruments.

[2] In addition, the Fannie Mae Form 3033 mortgage provides that the option to accelerate may be exercised only upon satisfaction of certain conditions, including notice and an opportunity for the borrower to correct the default.

anticipate and tolerate defaults relating to timely payment, permitting the borrower to correct such deficiencies without a significant disturbance in the contractual relationship. Precipitous acceleration of the debt serves neither party as it works a fundamental alteration of the status quo.

Indeed, a noteholder's election to accelerate the entire debt has multiple, significant effects. Particularly relevant to these appeals, under the typical contract, acceleration permits the noteholder to commence an action seeking the remedy of full foreclosure (*see Odell*, 73 NY at 345)—an equitable tool permitting the noteholder to take possession of the real property securing the debt (*Copp v Sands Point Mar.*, 17 NY2d 291, 293 [1966]). Accordingly, a cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action (*see* CPLR 203[a], 213[4]; *Phoenix Acquisition Corp. v Campcore, Inc.*, 81 NY2d 138, 143 [1993]; *Lubonty*, 34 NY3d at 261; *see also CDR Créances S.A. v Euro-American Lodging Corp.*, 43 AD3d 45, 51 [1st Dept 2007]; *EMC Mtge. Corp. v Patella*, 279 AD2d 604, 605 [2d Dept 2001]; *Lavin v Elmakiss*, 302 AD2d 638, 639 [3d Dept 2003]; *Business Loan Ctr., Inc. v Wagner*, 31 AD3d 1122, 1123 [4th Dept 2006]).[3] Acceleration is therefore a significant event for statute of limitations purposes and, in two of these

---

[3] Prior to acceleration, upon a default on the obligation to timely make an installment payment, a cause of action accrues to recover that installment payment, triggering the six-year statute of limitations for an action to recover that payment (*see Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co.*, 18 NY3d 765, 770 [2012]; *e.g., Loiacono v Goldberg*, 240 AD2d 476, 477 [2d Dept 1997]; *Pagano v Smith*, 201 AD2d 632, 633-634 [2d Dept 1994]) but a default alone does not trigger the statute of limitations relating to a foreclosure action (*see Phoenix Acquisition Corp.*, 81 NY2d at 143).

appeals, the timeliness dispute turns on whether certain acts—in *Wells Fargo*, the filing of complaints in prior foreclosure actions and, in *Vargas*, the issuance of a default letter—effectuated an acceleration of the indebtedness, starting the clock on the noteholders' claims.

## I.

We have had few occasions to address how a lender may effectuate an acceleration of the maturity of a debt secured on real property. However, in *Albertina Realty Co.*, we made clear that any election to accelerate must be made in accordance with the terms of the note and mortgage and that the parties are free to include provisions detailing what the noteholder must do to accelerate the debt (258 NY at 475-476). We further held that, to be valid, an election to accelerate must be made by an "unequivocal overt act" that discloses the noteholder's choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt (*id.* at 476). Although the Court did not otherwise decide "just what a holder of a mortgage must do to exercise the right of election, under an acceleration clause," it did clarify that "[t]he fact of election should not be confused with the notice or manifestation of such election" (*id.*). While the act evincing the noteholder's election must be sufficient to "constitute[] notice to all third parties of such [a] choice," a borrower's lack of actual notice "d[oes] not as a matter of law destroy" the effect of the election (*id.*). Put another way, the point at which a borrower has actual notice of an election to accelerate is not the operative event for purposes of determining when the statute of limitations begins

to run. Indeed, in *Albertina*, we held that the debt was accelerated when the verified complaint and *lis pendens* were filed, even though the papers had not yet been served on the borrower (*id.*). The determinative question is not what the noteholder intended or the borrower perceived, but whether the contractual election was effectively invoked.

There are sound policy reasons to require that an acceleration be accomplished by an "unequivocal overt act." Acceleration in this context is a demand for payment of the outstanding loan in full that terminates the borrower's right to repay the debt over time through the vehicle of monthly installment payments (although the contracts may provide the borrower the right to cure) (*see Federal Natl. Mtge. Assn. v Mebane*, 208 AD2d 892, 894 [2d Dept 1994]). Such a significant alteration of the borrower's obligations under the contract—replacing the right to make recurring payments of perhaps a few thousand dollars a month or less with a demand for immediate payment of a lump sum of hundreds of thousands of dollars—should not be presumed or inferred; noteholders must unequivocally and overtly exercise an election to accelerate. With these principles in mind, we turn to the two appeals before us in which the parties dispute whether, and when, a valid acceleration of the debt occurred, triggering the six-year limitations period to commence a foreclosure claim.

### *Wells Fargo*

The central issue in *Wells Fargo* is whether the commencement of either of two prior, dismissed foreclosure actions constituted a valid acceleration, impacting the

timeliness of this foreclosure action (the fifth involving this property),[4] which was commenced in December 2017. Over ten years ago, borrower Donna Ferrato allegedly defaulted on a $900,000 loan secured by a mortgage on her Manhattan condominium unit. Upon Wells Fargo's initiation of this foreclosure action, Ferrato moved to dismiss, arguing that the debt was accelerated in September 2009 by the commencement of the second foreclosure action and the limitations period therefore expired six years later, in September 2015. Supreme Court denied Ferrato's motion, concluding that neither the second nor the third foreclosure actions—commenced in 2009 and 2011, respectively—validly accelerated the debt because, as Ferrato had successfully argued in Supreme Court in those actions, the complaints reflected an attempt to foreclose upon the original note and mortgage even though the terms of that note had been modified (increasing the debt and changing the interest rate) in 2008. On Ferrato's appeal, the Appellate Division (among other things) reversed and granted her motion to dismiss, reasoning that the September 2009 complaint effected a valid acceleration of the modified loan despite the failure to

---

[4] As these cases reflect, for many reasons, including the extraordinary length of the contractual relationship—frequently spanning decades—multiple foreclosure actions involving the same borrower are not unusual. This type of contractual relationship is not static. Not only might a borrower's circumstances and payment practices vary over the course of three decades (a default may lead to a foreclosure action that is ultimately resolved through payment of arrears), but the party entitled to enforce the note is similarly variable because notes secured by residential mortgages are typically negotiable instruments, meant to be transferred and assigned. Moreover, the legislature has imposed exacting standards for bringing a foreclosure claim—*e.g.*, prescribing the precise method of providing pre-suit notice to the borrower (*see* RPAPL 1304) and detailing what must be included in a foreclosure complaint (*see e.g.*, CPLR 3012-b)—and an action may be dismissed for failure to adhere to those requirements.

reference the correct loan documents.[5]  The Appellate Division granted Wells Fargo leave to appeal to this Court and, because we agree with Wells Fargo that the modified loan debt which it now seeks to enforce could not have been accelerated by the complaints filed in the second (or, for that matter, third) foreclosure action which failed to reference the modified note, we reverse the portion of the Appellate Division order granting Ferrato's motion to dismiss the complaint in the fifth foreclosure action and deny that motion.

It is undisputed that the parties modified the original loan in 2008 after Ferrato's initial default, changing the terms by altering the interest rate and increasing the principal amount of the loan by more than $60,000.  Nevertheless, in the second foreclosure action on which Ferrato relies, Wells Fargo attached only the original note and mortgage (stating a principal amount of $900,000) to the complaint and failed to acknowledge that the parties entered into a modification agreement altering the amount and terms of the loans (the only oblique evidence of a modification was in an attached schedule stating a principal dollar amount consistent with the modified debt).  Although Ferrato successfully moved to dismiss both prior actions on the basis that these deficiencies precluded Wells Fargo from foreclosing on her property, she now asserts that the filing of those complaints validly accelerated the debt.  It is well-settled that the filing of a verified foreclosure complaint may evince an election to accelerate (*see Albertina*, 258 NY at 476), but here the filings did not accelerate the modified loan (underlying the current foreclosure action) because the

---

[5] The bank's appeal from another portion of the Appellate Division order relating to the fourth action between the parties is addressed in section II.

bank failed to attach the modified agreements or otherwise acknowledge those documents, which had materially distinct terms. Under these circumstances—where the deficiencies in the complaints were not merely technical or *de minimis* and rendered it unclear what debt was being accelerated—the commencement of these actions did not validly accelerate the modified loan (*Albertina Realty Co.*, 258 NY2d at 476).[6] Because Ferrato did not identify any other acceleration event occurring more than six years prior to the commencement of the fifth foreclosure action, the Appellate Division erred in granting her motion to dismiss that action as untimely.

### *Vargas*

In *Vargas*, an action under RPAPL 1501 (4) to discharge a mortgage on real property commenced by borrower Juan Vargas against noteholder Deutsche Bank,[7] the parties dispute whether a default letter issued by the bank's predecessor-in-interest validly accelerated the debt. New York courts have observed, consistent with *Albertina*, that the acceleration of a mortgage debt may occur by means other than the commencement of a foreclosure action, such as through an unequivocal acceleration notice transmitted to the

---

[6] Notably, in the third foreclosure action, not only was the complaint plagued by the same defects as the second action, but Wells Fargo also asserted in response to the motion to dismiss that it was proceeding on the original, unmodified loan. The court dismissed the action, reasoning that Wells Fargo had commenced the action on the wrong debt.

[7] Under section 1501 of the Real Property Actions and Proceedings Law (RPAPL), a person with an interest in the property may commence an action "to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom" "[w]here the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired" (RPAPL 1501[4]).

borrower (*see Mejias v Wells Fargo N.A.*, 186 AD3d 472, 474 [2d Dept 2020]; *Lavin*, 302 AD2d at 638-639).  However, the Appellate Division departments disagree on the language necessary to render a letter sufficiently unequivocal to constitute a valid election to accelerate.  In *Deutsche Bank Natl. Trust Co. v Royal Blue Realty Holdings, Inc.* (148 AD3d 529 [1st Dept 2017]), the First Department concluded that a letter stating that the noteholder "will" accelerate upon the borrower's failure to cure the default constituted clear and unequivocal notice of an acceleration that became effective upon the expiration of the cure period.  But the Second Department has rejected that view *(see e.g.*, *Milone v US Bank N.A.*,164 AD3d 145 [2d Dept 2018]; *21st Mtge. Corp. v Adames*, 153 AD3d 474 [2d Dept 2017]), reasoning that comparable language did not accelerate the debt and was "merely an expression of future intent that fell short of an actual acceleration," which could "be changed in the interim" (*Milone*, 164 AD3d at 152).  This disagreement is at the heart of the parties' dispute in *Vargas*.

Vargas commenced this quiet title action against Deutsche Bank in July 2016, seeking to cancel a $308,000 mortgage on residential property in the Bronx, contending the statute of limitations for any claim to foreclose on the mortgage had expired.  Deutsche Bank moved to dismiss and, in opposition, Vargas argued that an August 2008 default letter sent by the bank's predecessor-in-interest[8] had accelerated the debt and that the limitations period had expired before commencement of the quiet title action.  Supreme Court initially

---

[8] No argument is made here that the predecessor-in-interest lacked the authority to accelerate the maturity of the debt and we therefore do not address that question.

rejected that contention, reasoning that the default letter was insufficient in itself to constitute an election to accelerate. However, on renewal, the court reversed course, denied Deutsche Bank's motion to dismiss and granted summary judgment to Vargas, declaring the mortgage unenforceable and the property free from any encumbrances. The Appellate Division affirmed, deeming the letter a valid acceleration pursuant to *Royal Blue Realty*, and we granted Deutsche Bank leave to appeal (34 NY3d 910 [2020]).

It is undisputed that the August 2008 default letter was sent to Vargas—the only question is whether it effectuated a clear and unequivocal acceleration of the debt, an issue of law. The default letter informed Vargas that his loan was in "serious default" because he had not made his "required payments," but that he could cure the default by paying approximately $8,000 "on or before 32 days from the date of [the] letter." It further advised that, should he fail to cure his default, the noteholder "will accelerate [his] mortgage with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." The letter warned: "[f]ailure to cure your default may result in the foreclosure and sale of your property."

We reject Vargas's contention that the August 2008 letter accelerated the debt and we therefore reverse the Appellate Division order, deny plaintiff's motion for summary judgment and grant Deutsche Bank's motion to dismiss. First and foremost, the letter did not seek immediate payment of the entire, outstanding loan, but referred to acceleration only as a future event, indicating the debt was not accelerated at the time the letter was written. Nor was this letter a pledge that acceleration would immediately or automatically

occur upon expiration of the 32-day cure period. Indeed, an automatic acceleration upon expiration of the cure period could be considered inconsistent with the terms of the parties' contract, which gave the noteholder an optional, discretionary right to accelerate upon a default and satisfaction of certain conditions enumerated in the agreement. Although the letter states that the debt "will [be] accelerate[d]" if Vargas failed to cure the default within the cure period, it subsequently makes clear that the failure to cure "may" result in the foreclosure of the property, indicating that it was far from certain that either the acceleration or foreclosure action would follow, let alone ensue immediately at the close of the 32-day period.

This case demonstrates why acceleration should not be deemed to occur absent an overt, unequivocal act. Noteholders should be free to accurately inform borrowers of their default, the steps required for a cure and the practical consequences if the borrower fails to act, without running the risk of being deemed to have taken the drastic step of accelerating the loan. Even in the event of a continuing default, default notices provide an opportunity for pre-acceleration negotiation—giving both parties the breathing room to discuss loan modification or otherwise devise a plan to help the borrower achieve payment currency, without diminishing the noteholder's time to commence an action to foreclose on the real property, which should be a last resort.

## II.

In *Freedom Mortgage* and *Ditech*, the issue is not whether or when the debt was accelerated but whether a valid election to accelerate, effectuated by the commencement

of a prior foreclosure action, was revoked upon the noteholder's voluntary discontinuance of that action. More than a century ago, in *Kilpatrick v Germania Life Ins. Co.* (83 NY 163, 168 [1905]), this Court addressed whether a noteholder who had exercised its discretionary option to accelerate the maturity of a debt pursuant to the terms of a mortgage could revoke that acceleration. We held that the noteholder's acceleration "became final and irrevocable" only *after* the borrower changed his position in reliance on that election by executing a new mortgage, applying an equitable estoppel analysis (*id.*).

Practically, the noteholder's act of revocation (also referred to as a de-acceleration) returns the parties to their pre-acceleration rights and obligations—reinstating the borrowers' right to repay any arrears and resume satisfaction of the loan over time via installments, *i.e.*, removing the obligation to immediately repay the total outstanding balance due on the loan, and provides borrowers a renewed opportunity to remain in their homes, despite a prior default. Thus, following a de-acceleration, a payment default could give rise to an action on the note to collect missed installments (an action with a six-year statute of limitations that runs on each installment from the date it was due). Or the noteholder might again accelerate the maturity of the then-outstanding debt, at which point a new foreclosure claim on that outstanding debt would accrue with a six-year limitations period. Determining whether, and when, a noteholder revoked an election to accelerate can be critical to determining whether a foreclosure action commenced more than six years after acceleration is time-barred. In opposition to motions to dismiss, *Freedom Mortgage* and *Ditech* asserted that their foreclosure actions were timely because they had revoked

prior elections to accelerate by voluntarily withdrawing those actions.  In response, the borrowers did not dispute the noteholders' right to revoke but contended a voluntary discontinuance does not revoke an acceleration.

Although this Court has never addressed what constitutes a revocation in this context, the Appellate Division departments have consistently held that, absent a provision in the operative agreements setting forth precisely what a noteholder must do to revoke an election to accelerate, revocation can be accomplished by an "affirmative act" of the noteholder within six years of the election to accelerate (*NMNT Realty Corp. v Knoxville 2012 Trust*, 151 AD3d 1068, 1069 [2nd Dept 2017]; *Lavin*, 302 AD2d at 639; *Federal Natl. Mtge. Assn. v Rosenberg*, 180 AD3d 401, 402 [1st Dept 2020]).  For example, an express statement in a forbearance agreement that the noteholder is revoking its prior acceleration and reinstating the borrower's right to pay in monthly installments has been deemed  an "affirmative act" of de-acceleration (*see U.S. Bank Trust, N.A. v Rudick*, 172 AD3d 1430, 1430-1431 [1st Dept 2019]).  However, no clear rule has emerged with respect to the issue raised here—whether a noteholder's voluntary motion or stipulation to discontinue a mortgage foreclosure action, which does not expressly mention de-acceleration or a willingness to accept installment payments, constitutes a sufficiently "affirmative act."  Prior to 2017, without guidance from the Appellate Division, multiple trial courts had concluded that a noteholder's voluntary withdrawal of its foreclosure action was an affirmative act of revocation as a matter of law (s*ee e.g., 4 Cosgrove 950 Corp. v Deutsche Bank Natl. Trust Co.*, 2016 WL 2839341, *1-4, 2016 NY Misc LEXIS 44901,

*2-5 [Sup Ct, NY County, May 10, 2016]; *see also U.S. Bank Trust, N.A. v Adhami*, 2019 WL 486086, *5-6 and n 7, 2019 US Dist LEXIS 19599,*12-13 and n 7 [ED NY, Feb. 6, 2019, No. 18-CV-530 (PKC) (AKT)] [collecting cases]).

In 2017, the Second Department first addressed this issue in *NMNT Realty* (151 AD3d 1068), denying a borrower's summary judgment motion to quiet title on the rationale that the noteholder's motion to discontinue a prior foreclosure action raised a "triable issue of fact" as to whether the prior acceleration had been revoked.[9]  The First Department has, at times, articulated the same rule (*see Capital One, N.A. v Saglimbeni*, 170 AD3d 508, 509 [1st Dept 2019]; *U.S. Bank N.A. v Charles*, 173 AD3d 564, 565 [1st Dept 2019]). However, more recently, as reflected in the Second Department's decisions in *Freedom Mortgage* and *Ditech* (among other cases), a different rule has emerged—that a noteholder's motion or stipulation to withdraw a foreclosure action, "in itself," is *not* an affirmative act of revocation of the acceleration effectuated via the complaint (*see Freedom Mtge. Corp.*, 163 AD3 631, 633 [2d Dept 2018]; *Ditech*, 175 AD3d 1387, 1389 [2d Dept

---

[9] In these four cases, the relevant facts—*e.g.*, whether or not a voluntary discontinuance occurred or whether a default letter was sent—are not disputed and thus, whether acceleration was or was not revoked does not present a question of fact in the context of these appeals.  Instead, the parties dispute the legal significance of events they acknowledge occurred—whether the voluntary discontinuance constituted a revocation of an acceleration that was accomplished by commencement of a prior action—a question that we determine as a matter of law.  To be sure, there may be cases in which the question of whether an acceleration was validly revoked involves an "issue of fact," such as where the operative facts surrounding a purported acceleration or revocation are disputed, and the court may be unable to decide whether the statute of limitations had run as a matter of law. But that is not the situation in these appeals.  Likewise, different notes and mortgage instruments may incorporate their own rules for acceleration or revocation thereof.

2018]; *Wells Fargo Bank, N.A. v Liburd*, 176 AD3d 464, 464-465 [1st Dept 2019]). Both approaches require courts to scrutinize the course of the parties' post-discontinuance conduct and correspondence, to the extent raised, to determine whether a noteholder meant to revoke the acceleration when it discontinued the action (*see e.g., Vargas*, 168 AD3d 630, 630 [1st Dept 2019]). For example, in *Christiana Trust v Barua* (184 AD3d 140, 149 [2d Dept 2020])—after determining that the voluntary discontinuance was of no effect under the more recent approach described above—the court faulted the bank for failing to come forward with evidence that, after the discontinuance, it demanded resumption of monthly payments, invoiced the borrower for such payments, or otherwise demonstrated "it was truly seeking to de-accelerate the debt". Thus, the court suggested that the revocation inquiry turns on an exploration into the bank's intent, accomplished through an exhaustive examination of post-discontinuance acts.

This approach is both analytically unsound as a matter of contract law and unworkable from a practical standpoint. As is true with respect to the invocation of other contractual rights, either the noteholder's act constituted a valid revocation or it did not; what occurred thereafter may shed some light on the parties' perception of the event but it cannot retroactively alter the character or efficacy of the prior act. Indeed, where the contract requires a pre-acceleration default notice with an opportunity to cure, a post-discontinuance letter sent by the noteholder that references the then-outstanding total debt and seeks immediate repayment of the loan is not necessarily evidence that the prior voluntary discontinuance did not revoke acceleration—it is just as likely an indication that

it did and the noteholder is again electing to accelerate due to the borrower's failure to cure a default. The impetus behind the requirements that an action be unequivocal and overt in order to constitute a valid acceleration and sufficiently affirmative to effectuate a revocation is that these events significantly impact the nature of the parties' respective performance obligations. A rule that requires post-hoc evaluation of events occurring after the voluntary discontinuance—correspondence between the parties, payment practices and the like—in order to determine whether a revocation previously occurred leaves the parties without concrete contemporaneous guidance as to their current contractual obligations, resulting in confusion that is likely to lead (perhaps inadvertently) to a breach, either because the borrower does not know that the obligation to make installment payments has resumed or the noteholder is unaware that it must accept a timely installment if tendered.

Indeed, if the effect of a voluntary discontinuance of a mortgage foreclosure action depended solely on the significance of noteholders' actions taking place months (if not years) later, parties might not have clarity with respect to their post-discontinuance contractual obligations until the issue was adjudicated in a subsequent foreclosure action (which is what occurred here); in both *Freedom Mortgage* and *Ditech*, the Appellate Division disagreed with Supreme Court's determinations that the prior accelerations had been revoked by the voluntary discontinuance. Not only is this approach harmful to the parties but it is incompatible with the policy underlying the statute of limitations because— under the post-hoc, case-by-case approach adopted by the Appellate Division—the timeliness of a foreclosure action "cannot be ascertained with any degree of certainty," an

outcome which this Court has repeatedly disfavored (*ACE Sec. Corp.*, 25 NY3d at 593-594). Further, the Appellate Division's recent approach suggests that a noteholder can retroactively control the effect of a voluntary discontinuance through correspondence it sends to the borrower after the case is withdrawn (which injects an opportunity for gamesmanship). We decline to adopt such a rule.

Rather, we are persuaded that, when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—*i.e.*, the withdrawal of the complaint—constitutes a revocation of that acceleration. In such a circumstance, the noteholder's withdrawal of its only demand for immediate payment of the full outstanding debt, made by the "unequivocal overt act" of filing a foreclosure complaint, "destroy[s] the effect" of the election (*see Albertina,* 258 NY at 476). We disagree with the Appellate Division's characterization of such a stipulation as "silent" with respect to revocation (*Freedom Mtge. Corp.*, 163 AD3d at 633). A voluntary discontinuance withdraws the complaint and, when the complaint is the only expression of a demand for immediate payment of the entire debt, this is the functional equivalent of a statement by the lender that the acceleration is being revoked. Accordingly, we conclude that where acceleration occurred by virtue of the filing of a complaint in a foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law, absent an express, contemporaneous statement to the contrary by the noteholder.

This approach comports with our precedent favoring consistent, straightforward application of the statute of limitations which serves the objectives of "finality, certainty and predictability," to the benefit of both borrowers and noteholders (*ACE Sec. Corp.*, 25 NY3d at 593; *see also Matter of Regina Metro. Co., LLC v New York State Division of Hous. & Community Renewal*, 35 NY3d 332, 372 [2020] [noting New York's "strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations"]; *Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts.*, 32 NY3d 139, 151 [2018]). The effect of a voluntary discontinuance should not turn on courts' after-the-fact analysis of the significance of subsequent conduct and correspondence between the parties, occurring months, if not years, after the action is withdrawn. Such an approach leads to inconsistent and unpredictable results and, critically, renders it impossible for parties to know whether, or when, a valid revocation has occurred, inviting costly and time-consuming litigation to determine timeliness.

The impact of the noteholder's voluntary discontinuance of the action should be evident at the moment it occurs. A clear rule that a voluntary discontinuance evinces revocation of acceleration (absent a noteholder's contemporaneous statement to the contrary) makes it possible for attorneys to counsel their clients accordingly, allowing borrowers to take advantage of the opportunity afforded by the de-acceleration— reinstatement of the right to pay arrears and make installment payments, eliminating the obligation to immediately pay the entire outstanding principal amount in order to avoid

losing their homes.[10]  A return to the installment plan also makes it more likely that borrowers can benefit from the various public and private programs that exist to help borrowers work out of a default.  Given the advantages of a clear default rule reinstating the pre-accelerated terms of the loan, the onus is on noteholders to inform the borrower at the time of the discontinuance if acceleration has not been revoked and it will not accept installment payments.

*Freedom Mortgage & Ditech*

The appeals in *Freedom Mortgage* and *Ditech* are easily resolved by application of this rule.  In both cases, the borrowers' motions to dismiss on statute of limitations grounds were predicated on the argument that an acceleration effectuated by a prior foreclosure action had never been revoked and the six-year limitations period expired prior to commencement of the instant action.  In both cases, Supreme Court essentially applied the rule we adopt today—the acceleration was revoked by a voluntary discontinuance of the prior action—but the Appellate Division reversed in each case, dismissing the actions as time-barred.  In *Freedom Mortgage*, the Appellate Division reasoned that the acceleration was not revoked because the stipulation was "silent" as to revocation.  Applying the rule

---

[10] Moreover, this clarity also benefits those seeking to purchase notes secured by residential mortgages—negotiable instruments that are intended to be bought and sold, often changing hands repeatedly during their duration.  Unlike the current Second Department approach, a clear rule on the effect of a voluntary discontinuance provides potential noteholders the opportunity to assess, based on clear, objective indicia and without the aid of an appellate court, the nature and status of the instrument they look to buy (*e.g.*, whether the note is accelerated) and value it accordingly.

articulated above, Freedom Mortgage validly revoked the prior acceleration, evinced by

the commencement of the July 2008 foreclosure action, when it voluntarily withdrew that

action in January 2013.[11]  Engel, the borrower, does not identify any contemporaneous

statement by Freedom Mortgage (in the stipulation or otherwise) that it was not de-

accelerating the debt or would not accept monthly installment payments.  There is no need

to analyze the parties' subsequent conduct and correspondence to determine the effect of

the 2013 stipulation.  Further, that the discontinuance was effectuated by a stipulation

between the parties does not mean that the borrower and the noteholder were required to

expressly agree on the effect of the discontinuance—whether to exercise the contractual

right to accelerate, and de-accelerate, remained within the discretion of Freedom Mortgage.

Because the July 2008 election had been revoked and the present action was commenced

within six years of any subsequent acceleration, the Appellate Division erred in granting

---

[11] In *Freedom Mortgage*, after sending Engel, the borrower, an August 2013 letter notifying him of its election to accelerate the debt secured by a mortgage on his property, the bank commenced the instant foreclosure action in February 2015.  Engel answered and moved to dismiss the complaint as time-barred, asserting that the debt was accelerated in July 2008 upon the filing of a prior foreclosure action and, as such,  the six-year limitations period expired several months before the instant action was commenced.  Freedom opposed Engel's motion to dismiss and cross-moved for summary judgment, arguing as relevant here that its voluntary discontinuance of the prior claim revoked that acceleration and the statute of limitations for this action was not triggered until its August 2013 acceleration letter.  Supreme Court granted Freedom's cross motion for summary judgment, struck Engel's statute of limitations affirmative defense and implicitly denied his motion.  On Engel's appeal, the Appellate Division reversed and determined the action was time-barred, reasoning that the acceleration was not revoked when the prior action was discontinued because the stipulation was "silent" as to revocation.  We granted Freedom Mortgage leave to appeal (33 NY3d 1039 [2019]).

Engel's motion to dismiss on statute of limitations grounds.  Accordingly, Engel having

directed no challenge to the noteholder's prima facie showing of his default, we reverse the

Appellate Division order and reinstate the Supreme Court order granting relief to the bank.

A reversal is also warranted in *Ditech*, where the Appellate Division reasoned that

the voluntary withdrawal of the prior action "did not, in itself constitute an affirmative act"

of revocation.[12]  The February 2014 stipulation discontinuing the prior foreclosure action

revoked the acceleration effectuated by the commencement of that action, and the record

contains no contemporaneous statement by Ditech to the contrary.  That Ditech sent Naidu,

the borrower, a payoff letter in March 2015—more than a year later—communicating the

---

[12] Ditech commenced this foreclosure action against Naidu in January 2016 by filing a verified complaint stating that it was accelerating the mortgage and declaring the entire outstanding loan immediately due and payable, including recovery of unpaid installment payments.  Naidu answered, raising the statute of limitations as an affirmative defense, and subsequently moved to dismiss the action as time-barred, arguing that a prior foreclosure action commenced in 2009 had accelerated the debt and was not revoked when that action was voluntarily discontinued by the noteholder.  Ditech opposed the motion to dismiss and cross-moved for summary judgment on the complaint as against Naidu.  In two orders, Supreme Court denied Naidu's motion to dismiss, concluding that the stipulation discontinuing the prior action without prejudice was an "affirmative act of revocation" and thus, the statute of limitations had not run, and granted Ditech's motion for summary judgment, determining that it had established its prima facie entitlement to judgment of foreclosure and Naidu failed to raise a question of fact in response.  On Naidu's appeal, the Appellate Division reversed the orders insofar as appealed from, granted Naidu's motion to dismiss the complaint insofar as asserted against him as time-barred, and denied as academic plaintiff's cross-motion for summary judgment insofar as asserted against Naidu. The Court held that Ditech failed to demonstrate that the acceleration of the debt, effectuated by the filing of the July 2009 foreclosure action, was revoked within six years, reasoning that the February 2014 discontinuance of the action "did not, in itself" constitute an affirmative act of de-acceleration.  Thus, the Court concluded, the action before it— commenced in January 2016—was untimely.  We granted the bank leave to appeal (34 NY3d 910 [2020]).

amount in default does not alter that result.  Naidu has not alleged that any other unrevoked acceleration occurred more than six years before the January 2016 commencement of this action that would render it untimely and raises no other arguments in defense of Ditech's summary judgment motion.  We therefore reverse the Appellate Division order and reinstate the Supreme Court orders, which denied Naidu's motion to dismiss and granted Ditech summary judgment.

### *Wells Fargo*

Finally, we return to Wells Fargo to address an additional issue relating to de-acceleration that arose in a prior foreclosure action, the fourth action.  Although Wells Fargo properly referenced the modified loan in that complaint, Ferrato moved to dismiss that action, alleging a lack of proper service.  Supreme Court denied the motion but, on Ferrato's appeal, the Appellate Division determined a question of fact was raised and remitted for a traverse hearing.  Wells Fargo then moved both to voluntarily discontinue that action and to revoke acceleration of the loan.  Supreme Court granted the motion to discontinue but stated, without explanation, that "the acceleration of the subject loan is NOT revoked."  On the bank's appeal of that portion of the order, the Appellate Division affirmed, indicating that Wells Fargo could not de-accelerate because it "admitted that its primary reason for revoking acceleration of the mortgage debt was to avoid the statute of limitations bar."[13]

---

[13] As indicated above, the Appellate Division addressed both the fourth and fifth foreclosure actions in one order and subsequently granted Wells Fargo's motion for leave to appeal to this Court.

The lower courts erred in denying Wells Fargo's motion to revoke and we therefore reverse that portion of the Appellate Division order as well. As stated above, while a noteholder may be equitably estopped from revoking its election to accelerate (*see Kilpatrick*, 183 NY at 168), defendant Ferrato did not allege that she materially changed her position in detrimental reliance on the loan acceleration, and the courts conducted no equitable estoppel analysis. We reject the theory, argued by Ferrato and reflected in several decisions (*see e.g., Wells Fargo Bank, N.A. v Portu*, 179 AD3d 1204, 1207 [3d Dept 2020]; *Christiana Trust*, 184 AD3d at 146; *Milone*, 164 AD3d at 154; *Deutsche Bank Natl. Trust Co. Ams. v Bernal*, 56 Misc 3d 915, 924 [Sup Ct, Westchester County 2017]), that a lender should be barred from revoking acceleration if the motive of the revocation was to avoid the expiration of the statute of limitations on the accelerated debt. A noteholder's motivation for exercising a contractual right is generally irrelevant (*see generally Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 435 [1994])—but it bears noting that a noteholder has little incentive to repeatedly accelerate and then revoke its election because foreclosure is simply a vehicle to collect a debt and postponement of the claim delays recovery.

Accordingly, in *Freedom Mortgage* and *Ditech*, the orders of the Appellate Division should be reversed, with costs, and the Supreme Court orders reinstated; in *Vargas*, the order of the Appellate Division should be reversed, with costs, defendant's motion to dismiss the complaint granted and plaintiff's cross motion for summary judgment denied; and in *Wells Fargo*, the order of the Appellate Division should be reversed, with costs,

defendant Ferrato's motion to dismiss denied, plaintiff's motion to revoke acceleration of the mortgage loan granted and the certified question not answered as unnecessary.

WILSON, J. (concurring):

I fully concur in the majority opinion but write to make one caveat clear. We have not decided whether the notes and mortgages at issue here permit a lender to revoke an

acceleration.[1] In three of the four cases before us, the issue was not in dispute: the borrowers did not contend that the noteholders lack the contractual right to revoke an acceleration. Ms. Ferrato stated that it is "well-established that a lender may revoke its election to accelerate the mortgage." Similarly, Mr. Naidu noted that the "[l]ender maintains the discretionary right to later revoke the acceleration." Neither party in *Vargas* mentioned the issue. In contrast, Mr. Engel argued at length that the note and mortgage grant the noteholder the contractual right to accelerate the loan but lack any contractual authorization to revoke that election (absent consent of the borrower). However, Mr. Engel raised that issue for the first time on appeal. Thus, it was not properly preserved for our review (*see, e.g., Feigelson v Allstate Ins. Co.*, 31 NY2d 913, 916 [1972]; Arthur Karger, Powers of the New York Court of Appeals § 17:1 [Sept. 2020 Update]).

---

[1] Three of those are the standard Fannie Mae forms for notes and mortgages (majority op. at 3 n.1).

RIVERA, J. (dissenting in part):

For the reasons discussed by the majority, I agree that there was no effective

acceleration in *Vargas v Deutsche Bank National Trust Co.* and *Wells Fargo Bank, N.A. v*

- 1 -

*Ferrato*. I am also in agreement that it was error for the lower courts to deny *Wells Fargo*'s motion to revoke.  Accordingly, I concur in the majority's resolution of *Vargas* and *Wells Fargo*.

The question of whether the noteholders effectively revoked acceleration in *Freedom Mortgage Corp. v Engel* and *Ditech Financial LLC v Naidu*—an issue of material significance in both appeals—is another matter.

As Judge Wilson notes, only the borrower in *Freedom Mortgage* has challenged the revocation on the ground that the noteholder does not have a contractual right to unilaterally revoke an acceleration (concurring op at 2). I agree with my colleague that because the borrower raises this challenge for the first time on appeal, it is unpreserved for our review (*see Bingham v New York City Tr. Auth.*, 99 NY2d 355, 359 [2003]).

Depending on whether and when we resolve that question, the rule adopted by the majority in these appeals may stand without further consideration, or be affirmed, modified, or discarded in the future. Nevertheless, if we are going to impose a "deceleration" rule based on the noteholder's voluntary withdrawal of a foreclosure action (majority op at 2), I would require that the noteholder provide express notice to the borrower regarding the effect of that withdrawal. I see no reason why an acceleration requires an unequivocal overt act—one that leaves no doubt as to the noteholder's intent— but revocation may be assumed by implication, requiring only that the noteholder affirmatively disavow an intention to revoke (*id.*). As the Second Department has recognized, there are many reasons for a noteholder to voluntarily withdraw an action (*see Christiana Trust v Barua*, 184 AD3d 140, 147 [2d Dept 2020], *lv denied* 35 NY3d 916

[2020]). Application of the rule requiring notice is simple and not at all burdensome. The noteholder need only inform the borrower in the stipulation or a letter that withdrawal constitutes a revocation of the acceleration. Such notice ensures transparency in a high-stakes relationship.

Because appellants provided no evidence of notice, I would affirm the Appellate Division in *Freedom Mortgage* and *Ditech*.


For No. 1:
Order reversed, with costs, and order of Supreme Court, Orange County, reinstated. Opinion by Chief Judge DiFiore. Judges Stein, Fahey, Garcia, Wilson and Feinman concur, Judge Wilson in a concurring opinion. Judge Rivera dissents and votes to affirm in an opinion.

For No. 2:
Order reversed, with costs, and orders of Supreme Court, Queens County, reinstated. Opinion by Chief Judge DiFiore. Judges Stein, Fahey, Garcia, Wilson and Feinman concur, Judge Wilson in a concurring opinion. Judge Rivera dissents and votes to affirm in an opinion.

For No. 3:
Order reversed, with costs, defendant's motion to dismiss the complaint granted and plaintiff's cross motion for summary judgment denied. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur, Judge Rivera in a concurring opinion and Judge Wilson in a separate concurring opinion.

For No. 4:
Order reversed, with costs, defendant Ferrato's motion to dismiss denied, plaintiff's motion to revoke acceleration of the mortgage loan granted and certified question not answered as unnecessary. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur, Judge Rivera in a concurring opinion and Judge Wilson in a separate concurring opinion.


Decided February 18, 2021